STATE OF NORTH CAROLINA v. WILLIAM EARL JONES

No. 767SC696

(Filed 2 March 1977)

1. **Automobiles § 112— speed of vehicle — admissibility of opinion evidence**

    In a prosecution for manslaughter the trial court did not err in allowing a deputy sheriff who observed defendant's vehicle for some time prior to the accident in question and at the time of the accident to give his opinion of the speed of the vehicle; moreover, defendant waived his objection to testimony about speed where similar testimony was permitted without objection.

2. **Criminal Law § 75— defendant as driver of car — no arrest — admissibility of statement**

    The trial court in a manslaughter prosecution did not err in permitting a deputy sheriff to testify that defendant told him immediately after the accident that he was the driver, since, at the time defendant made the statement, he was not under arrest or in custody, and the inquiry by the deputy was a reasonable and necessary on-the-scene investigation.

3. **Criminal Law § 169— evidence that defendant drove car — admission not prejudicial**

    Even if the trial court in a manslaughter prosecution erred in permitting a deputy sheriff to testify that a passenger told the deputy

State v. Jones

that defendant was the driver of the car in question, such error was not prejudicial, since defendant himself admitted that he was driving the car.

4. **Criminal Law § 35— offense committed by another — admissibility of evidence**

The trial court in a manslaughter prosecution did not err in denying defendant the right to incriminate another person as the driver of the vehicle causing death instead of defendant, since, in order to be competent, evidence that the crime was committed by another must point unerringly to the latter's guilt.

5. **Criminal Law § 104— motion to dismiss — evidence considered**

All of the evidence actually admitted, whether competent or incompetent, including that offered by the defendant, if any, which is favorable to the State, must be taken into account and so considered by the court in ruling upon a motion to dismiss.

6. **Automobiles § 113— high speed in heavy traffic — manslaughter — sufficiency of evidence**

Evidence was sufficient to be submitted to the jury in a prosecution for manslaughter where it tended to show that defendant drove at an excessive speed in heavy traffic; defendant drove to his left of the median; defendant's vehicle struck another vehicle; and the deaths of the occupants of the second vehicle were the proximate result of the illegal operation of defendant's vehicle.

APPEAL by defendant from *Cowper, Judge.* Judgments entered 1 April 1976 in Superior Court, NASH County. Heard in the Court of Appeals 8 February 1977.

Defendant was charged in two bills of indictment with the felonies of manslaughter in the deaths of Carolyn James Stevey and James Martin Stevey, Jr.

At trial it was stipulated that Carolyn James Stevey and James Martin Stevey, Jr., each died at about 4:02 p.m. on 29 December·1975 as a proximate result of injuries received in a collision between a 1972 Plymouth automobile in which they were riding and a 1974 Ford Thunderbird automobile on Sunset Avenue, Rocky Mount, North Carolina, at approximately 4:02 p.m. on 29 December 1975.

The State's evidence tended to show the following: In the afternoon of 29 December 1975 Deputy Sheriff Moody of Nash County was driving east towards Rocky Mount on Highway 64 leading from the business district of Nashville. He observed a Ford Thunderbird make a dangerous turn in front of another vehicle in order to turn onto the ramp leading to the Highway

64 bypass. The deputy pursued the Ford Thunderbird onto the bypass and turned on his blue lights and siren. The Ford Thunderbird accelerated to 100 to 120 miles per hour. The Thunderbird turned right on the Winstead Avenue exit, knocked down the stop sign at the end of the exit, and turned right onto Winstead Avenue, traveling in a southerly direction.

Winstead Avenue is a four-lane street with two lanes for northbound traffic and two lanes for southbound traffic. At its intersection with Sunset Avenue there is an additional lane for traffic turning left from Winstead onto Sunset. There are electrically operated stop and go traffic lights at the intersection. As the Thunderbird, traveling south on Winstead, approached the Sunset intersection, the light for traffic on Winstead was red. An automobile was stopped in the left turn lane on Winstead waiting for the green light. The Thunderbird drove to the left of the stopped car, drove south on a lane for northbound traffic, and made a left turn onto Sunset Avenue.

Sunset Avenue is a four-lane street with two lanes for eastbound traffic and two lanes for westbound traffic. The eastbound and westbound lanes are divided by a painted median. Traffic in the eastbound lanes and in the westbound lanes was heavy. The posted speed limit on Sunset Avenue was 35 miles per hour. The Thunderbird traveled easterly, weaving back and forth in the eastbound lanes passing other vehicles. At times the Thunderbird traveled between 70 and 80 miles an hour as it accelerated to pass other vehicles. As the Thunderbird accelerated to about 70 miles per hour to pass a vehicle in front of it, the Thunderbird crossed the median, ran into the lane for westbound traffic, and crashed into the front of the 1972 Plymouth. The automobile immediately behind the Plymouth crashed into the rear of the Plymouth. The Thunderbird spun around into a position almost heading back in the direction from which it had come.

Except for a brief time at a curve on the Highway 64 bypass, Deputy Moody kept the Thunderbird in sight and was steadily pursuing it with his blue lights and siren on. Deputy Moody saw the collision occur.

Immediately after the accident defendant was in the driver's seat of the Thunderbird. He was assisted from the driver's seat and helped to the curb. One Aaron Boone was a passenger in the Thunderbird and was also assisted to the curb. Boone

State v. Jones

suffered a broken leg. Deputy Moody asked defendant and Boone who was driving the car. Boone pointed to defendant and said, "He was driving." Deputy Moody then asked defendant if he (defendant) was driving, and defendant said he was. Deputy Moody then asked defendant for his driver's license and vehicle registration. The driver's license was for William Earl Jones, 408 Dixie Street, Enfield, North Carolina. The vehicle was registered in the name of Lillie Mason Smith, 408 Dixie Street, Enfield, North Carolina.

Defendant and Boone were transported to the Nash General Hospital by the rescue squad. Officer Thompson of the Rocky Mount Police Department assisted Deputy Moody during the investigation at the scene. Later Officer Thompson went to Nash General Hospital and arrested defendant on the two charges of manslaughter.

Defendant offered no evidence.

The cases were submitted to the jury on two charges of involuntary manslaughter, and upon verdicts of guilty of involuntary manslaughter two judgments for concurrent terms of eight years' imprisonment were entered.

*Attorney General Edmisten, by Assistant Attorney General Isham B. Hudson, Jr., for the State.*

*Hux & Livermon, by James S. Livermon, Jr., for the defendant.*

BROCK, Chief Judge.

[1] Defendant argues that it was error to permit Deputy Moody to give his opinion of the speed of the defendant's vehicle while it was traveling on Sunset Avenue and at the time of the wreck. This argument is without merit. Deputy Moody was in pursuit of defendant's vehicle for a long while. He observed it on Highway 64, on Winstead Avenue, and on Sunset Avenue. Defendant's vehicle was in the deputy's view at the time of the impact. The inconsistencies which defendant maintains he developed in the deputy's testimony on cross-examination, if inconsistencies were in fact developed, were for resolution by the jury. Inconsistencies, standing alone, do not render testimony inadmissible. In any event Deputy Moody was permitted to testify without objection that in his opinion the Thunderbird automobile was traveling "approximately 70

miles per hour at the time it left the eastbound lane of Sunset Avenue, crossed over into the westbound lane and struck the Plymouth automobile." Defendant waived the benefit of his objection to testimony of his speed by permitting the above testimony of his speed to be admitted without objection. *State v. Creech,* 265 N.C. 730, 145 S.E. 2d 6 (1965).

[2]  Defendant argues that it was error to permit Deputy Moody to testify that defendant told the deputy that defendant was driving the Thunderbird. Before the admission of defendant's statement, a *voir doir* was held from which the trial judge determined that the statement was admissible. At the time Deputy Moody asked who was driving the car, defendant and Boone were not under arrest nor were they in custody. They had been assisted from the Thunderbird and were sitting on the curb. The inquiry by the deputy was a reasonable and necessary on-the-scene investigation. Clearly there was no police dominated atmosphere, and there was no coercion of defendant. In our view defendant's statement was properly admitted. *See State v. Sykes,* 285 N.C. 202, 203 S.E. 2d 849 (1974).

[3]  Defendant argues that it was error to permit Deputy Moody to testify that Boone told the deputy defendant was driving the car. After checking on the condition of the persons in the Plymouth and after calling for ambulances, Deputy Moody walked over to where defendant and Boone were seated on the curb. He inquired of the two of them, "Who was driving the vehicle?" Boone answered by pointing his finger at defendant and saying, "He was." Immediately thereafter defendant answered that he (defendant) was driving. Assuming, *arguendo,* that Boone's statement to the deputy was inadmissible, it cannot be held to be prejudicial error. Defendant admitted that he was driving the car. The witness Buchan, who reached the Thunderbird before defendant was assisted therefrom, positively identified defendant as the person in the driver's seat immediately after the accident. "To warrant a new trial it should be made to appear by defendant that the admission of the evidence complained of was material and prejudicial to defendant's rights and that a different result would have likely ensued if the evidence had been excluded." *State v. Temple,* 269 N.C. 57, 152 S.E. 2d 206 (1967).

[4]  Defendant argues that it was error to deny him the right to incriminate Boone as the driver of the Thunderbird instead

State v. Jones

of defendant. Defendant sought to show that Boone had no driver's license and that Boone was under the influence of alcohol. Defendant argues that had he been permitted to show these two things, it would have established that Boone was the driver of the Thunderbird. Defendant reasons that there was no cause for defendant to flee from the deputy, while there was cause for Boone to flee. Therefore, since Boone had a cause to flee from the deputy, it would be more reasonable to believe that Boone was the driver. This is a resourceful argument but not convincing. In order to be competent, evidence that the crime was committed by another must point unerringly to the latter's guilt. *State v. Smith*, 211 N.C. 93, 189 S.E. 175 (1937). "Evidence which can have no effect except to cast suspicion upon another or to raise a mere conjectural inference that the crime may have been committed by another . . . is not admissible." *State v. Shinn*, 238 N.C. 535, 78 S.E. 2d 388 (1953). *See* 4 Strong, N. C. Index 3d, Criminal Law, § 35.

[5, 6]  Finally defendant argues that his motion to dismiss should have been allowed. Basically defendant maintains that the evidence identifying him as the driver and the evidence of the speed of the vehicle were incompetent and that evidence to establish that Boone had a motive to flee from Deputy Moody was erroneously excluded. With the identification of the driver and evidence of the speed stricken, and the motive of Boone admitted, defendant maintains that his motion to dismiss should have been allowed. This argument overlooks a fundamental principle in our jurisprudence. All of the evidence actually admitted, whether competent or incompetent, including that offered by the defendant, if any, which is favorable to the State, must be taken into account and so considered by the court in ruling upon a motion to dismiss. *State v. Walls*, 4 N.C. App. 661, 167 S.E. 2d 547 (1969). When considered in the light most favorable to the State, the evidence in the present case tends to show that defendant drove at an excessive speed in heavy traffic; that defendant drove to his left of the median; that his Thunderbird struck the Plymouth; and that the deaths of the occupants of the Plymouth were the proximate result of the illegal operation of the Thunderbird. "An intentional, wilful or wanton violation of a statute or ordinance, designed for the protection of human life or limb, which proximately results in injury or death, is culpable negligence." *State v. Cope*, 204 N.C. 28, 167 S.E. 456 (1933); *State v. Stewardson*, 32 N.C. App. 344,

232 S.E. 2d 308. Evidence of an unlawful killing of a human being, unintentionally and without malice, proximately resulting from some act done in a culpably negligent manner, when fatal consequences were not improbable under all the facts existent at the time, will support a conviction of involuntary manslaughter. *State v. Robinson*, 15 N.C. App. 542, 190 S.E. 2d 427 (1972).

In our opinion defendant had a fair trial free from prejudicial error.

No error.

Judges BRITT and MORRIS concur.