STATE OF NORTH CAROLINA v. JAMES LORENZA BROGDEN

No. 779SC848

(Filed 18 April 1978)

1. **Criminal Law § 35— offense committed by another—insufficiency of evidence to show**

     The trial court in a murder prosecution did not err in excluding evidence that a State's witness and the deceased argued about cars and money on the evening preceding the shooting, since the excluded testimony did not point to the guilt of another.

2. **Homicide § 16.1— statement by deceased—admissibility as dying declaration or spontaneous utterance**

     The trial court in a murder prosecution did not err in allowing a witness to testify concerning a declaration made by deceased shortly after he was shot, since the evidence was sufficient for the court to infer that deceased had knowledge of his imminent death, and the statement was therefore admissible as a dying declaration; however, the statement would have been admissible as a spontaneous utterance even if it did not qualify as a dying declaration, since the statement was made in immediate response to the stimulus of the occurrence and without opportunity to reflect or fabricate.

3. **Homicide § 24.1— intentional use of deadly weapon—presumptions of malice and unlawfulness—jury instructions proper**

     The trial court in a homicide prosecution properly instructed the jury on the presumptions of malice and unlawfulness arising upon proof beyond a reasonable doubt that defendant intentionally wounded deceased with a deadly weapon.

APPEAL by defendant from *Canaday, Judge.* Judgment entered 12 May 1977 in Superior Court, PERSON County. Heard in the Court of Appeals 6 February 1978.

Defendant was indicted for the murder of Bonnie Wayne Thorpe. He was placed on trial for murder in the second degree. Evidence for the State, in summary, tends to show the following. In the early morning hours of 28 March 1976, deceased and about forty other people were gathered at a three-room house in Person County where alcoholic beverages were sold and facilities for

dancing were available. A fight broke out between persons other than deceased and defendant. Defendant then brandished a .25 caliber automatic pistol. The operator of the house, Gene Faison, testified that defendant shot the deceased. Faison and one Newman grabbed defendant and took him outside. Newman then took the gun. Other witnesses saw defendant with the pistol immediately after they heard the shot. While Newman was struggling with defendant, defendant was heard to threaten to "shoot somebody else." Before deceased was taken to the hospital, he told Carver that defendant had shot him. The bullet that was taken from the body of deceased was fired from the pistol that was taken from defendant. Two days earlier, defendant had purchased a box of .25 caliber ammunition similar to that used in the killing.

Defendant testified that he did not own a .25 caliber pistol and did not have a pistol with him at the time of the killing. He had been drinking and could not remember going to the place where the killing took place or anything that may have occurred while he was there.

Defendant was convicted of murder in the second degree, and judgment imposing a prison sentence was entered.

*Attorney General Edmisten, by Assistant Attorney General Elisha H. Bunting, Jr., for the State.*

*Ramsey, Hubbard & Galloway, by James E. Ramsey and Mark E. Galloway, for defendant appellant.*

VAUGHN, Judge.

[1] Defendant argues that the court erred in excluding evidence that he contends implicates a State's witness, Newman, as the killer. The excluded evidence tended, at best, to show that Newman and Thorpe had argued about cars and money on the evening preceding the shooting. The same witnesses said, however, that the two were not angry, that they were merely "carrying on." The excluded testimony did not point to the guilt of another and was properly excluded. In a similar case, *State v. Jones*, 32 N.C. App. 408, 232 S.E. 2d 475 (1977), *cert. den.*, 292 N.C. 643, 235 S.E. 2d 63, this Court held that it was not error to exclude evidence that another had a motive that the defendant

did not. The Court pointed out that this was not evidence that the crime in quesiton was committed by another and was, therefore, not relevant to the question of defendant's guilt.

[2] Defendant also assigns as error the admission of a declaration made by the deceased to Keester Carver shortly after he was shot. Carver testified that Thorpe asked him to take him to the hospital. When asked how he was shot, Thorpe responded that Brogden had shot him. Defendant contends that this testimony was hearsay and did not fall within any recognized exception to the rule. The evidence was handled at trial as if it fell within the exception for dying declarations. "The admissibility of a declaration as a dying declaration is a question to be determined by the trial judge. When the trial judge admits the declaration, on appeal, the ruling of the trial judge is reviewable only to determine whether there is evidence tending to show facts essential to support the trial judge's ruling." *State v. Brown*, 263 N.C. 327, 333, 139 S.E. 2d 609, 612 (1965). The only supporting fact at issue is whether the court could infer from the evidence that the deceased had knowledge of his imminent death. Carver testified that he deceased questioned him about the severity of the wound and asked help in getting to a hospital. He was gasping for breath and seemed very nervous and concerned about his condition. Shortly after making the statement, he appeared to go into shock and began to bleed from the mouth. Considering the general knowledge of the seriousness of a gunshot wound to the torso and the other circumstances, we conclude that the court was justified in admitting the declaration into evidence.

On the authority of *State v. Deck*, 285 N.C. 209, 203 S.E. 2d 830 (1974), the statement would have been admissible as a "spontaneous utterance" even if it did not qualify as a "dying declaration." In *Deck*, defendant was on trial for murder. A witness was permitted to testify that she saw decedent and another man running up the highway, that decedent told her that the other man had tried to rob him and that he had been stabbed. The Court said:

"We think the challenged statements were made in immediate response to the stimulus of the occurrence and without opportunity to reflect or fabricate. Further, decedent had no motive for fabrication. The time lapse between the

completion of the alleged crime, the ensuing chase and the statements made to the witness was negligible.

In our opinion, the challenged statements were spontaneous utterances and were therefore correctly admitted by the trial judge." 285 N.C. at 214, 203 S.E. 2d at 834.

The testimony in the case now under consideration meets the same standards and could have been admitted as a spontaneous utterance.

[3] Defendant contends that the court erred in failing to instruct the jury that they could return a verdict of guilty of involuntary manslaughter. In a related assignment of error, he contends that the judge erred when he instructed the jury as follows:

"Now, if the State satisfies you from the evidence beyond a reasonable doubt that the defendant Brodgen intentionally shot the decedent Thorpe with a .25 caliber pistol, which was a deadly weapon inflicting a wound upon the person of Thorpe, which would proximately caused the death of Thorpe, then you may, but need not imply or infer, that the killing was unlawful and done with malice."

Defendant contends that the instruction allows an impermissible use of a presumption and violates the principles of *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed. 2d 508 (1975). He concedes, nevertheless, that the instruction is consistent with the decisions of the Supreme Court of North Carolina in *State v. Hankerson*, 288 N.C. 632, 220 S.E. 2d 575 (1975), *rev'd on other grounds*, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed. 2d 306 (1977) and *State v. Williams*, 288 N.C. 680, 220 S.E. 2d 558 (1975). In *Hankerson*, the Supreme Court said:

"*Mullaney*, then, as we have interpreted it, requires our trial judges in homicide cases to follow these principles in their jury instructions: the State must bear the burden throughout the trial of proving each element of the crime charged including, where applicable, malice and unlawfulness beyond a reasonable doubt. The decision permits the state to rely on mandatory presumptions of malice and unlawfulness upon proof beyond a reasonable doubt that the defendant intentionally inflicted a wound upon the deceased with a deadly weapon which proximately resulted in death. If, after the

mandatory presumptions are raised, there is no evidence of a heat of passion killing on sudden provocation and no evidence that the killing was in self-defense, *Mullaney* permits and our law requires the jury to be instructed that defendant must be convicted of murder in the second degree." 288 N.C. at 651, 220 S.E. 2d at 589.

The instructions given in the case now under consideration were in complete accord with the foregoing, both as to the possible verdicts and presumptions arising from the evidence.

We have considered defendant's remaining assignments of error. We find no error that requires a new trial.

No error.

Judges HEDRICK and ERWIN concur.