STATE OF NORTH CAROLINA v. ALFONZA WILLIAMS

No. 879SC1012

(Filed 5 July 1988)

**1. Criminal Law § 35— involuntary manslaughter while driving under the influence—evidence that another committed the crime—evidence properly excluded**

In a prosecution of defendant for involuntary manslaughter while driving under the influence of alcohol, the trial court did not err in excluding testimony by the officer who investigated the accident that he originally charged another person with the offense, since the excluded evidence merely tended to show that the officer assumed and included within the police report that another person was the driver and defendant was a passenger; this evidence did not point unerringly to the other person or anyone else as the driver; the fact that the other person was originally charged and the charges were subsequently dropped had no probative value as to whether that person was the driver at the time in question; and the excluded testimony did not corroborate defendant's version but instead was inconsistent with defendant's testimony.

**2. Automobiles § 114— involuntary manslaughter while driving under the influence—failure to submit lesser offense of misdemeanor death by vehicle—error**

In a prosecution of defendant for involuntary manslaughter while driving under the influence of alcohol, the trial court erred in failing to submit misdemeanor death by vehicle as a lesser included offense where the State presented evidence to the effect that at the time of the collision defendant was intoxicated, was the operator of the vehicle, lost control of the vehicle immediately before the accident and ran onto the shoulder of the highway, attempted to snatch the vehicle back, veered across the highway into the other lane of travel, and collided head-on with the oncoming vehicle, while defendant presented evidence that at the time of the accident he was neither intoxicated nor was he the operator of the vehicle.

**3. Automobiles § 113— involuntary manslaughter while driving under the influence—felony death by vehicle not lesser offense**

Felony death by vehicle, N.C.G.S. § 20-141.4(a1), is not a lesser included offense of involuntary manslaughter while driving under the influence of alcohol, and the trial court therefore did not err in refusing to instruct the jury on that offense.

APPEAL by defendant from *Bowen, Wiley F., Judge.* Judgment entered 10 June 1987, in Superior Court, VANCE County. Heard in the Court of Appeals 29 March 1988.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Kaye R. Webb, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender David W. Dorey, for defendant-appellant.*

JOHNSON, Judge.

Defendant was tried upon indictments charging him with two counts of involuntary manslaughter while driving under the influence of alcohol, one count of driving while impaired and one count of driving while license in state of revocation. The jury returned verdicts of guilty as charged to each count. The trial judge arrested judgment on the driving while impaired conviction, and from the imposition of an active prison sentence, defendant appeals.

I

The State presented evidence which tended to show the following. On Friday, 11 July 1986, approximately 8:40 p.m., Officer Lonnie Holt of the North Carolina Highway Patrol was dispatched to the scene of a two car motor vehicle collision on U.S. Highway 158 in Vance County, North Carolina. The scene of the accident was approximately 3.6 miles west of the Henderson city limits. At the scene of the accident, U.S. 158 is a two lane highway running east and west, one lane for eastbound traffic and one lane for westbound traffic. Upon arriving at the scene, Officer Holt observed a brown 1974 two door Oldsmobile stopped in the westbound lane of the highway and a 1985 Renault sitting on the shoulder of the westbound lane of the highway. The Oldsmobile was pointed in an easterly direction and the Renault in a westerly direction. The fronts of both cars were badly damaged. Various skid and gouge marks on the highway led Officer Holt to conclude that the vehicles had collided head-on in the westbound lane. Defendant was found lying unconscious on the ground in front of the Oldsmobile. Irvin Hawley was wedged between the Oldsmobile's front seat and the steering wheel with his feet on the passenger's side of the car. Hawley had a head injury, was highly intoxicated and was attempting to exit the vehicle through its front left door. The Oldsmobile belonged to defendant. The bodies of Rosa and Franklin Reavis were found in the front seats of the Renault.

Both Rosa and Franklin Reavis died as a result of injuries sustained in the accident.

Officer Holt's investigation revealed that a Benjamin Dickey had also been an occupant of the Oldsmobile but that Dickey had left the scene after the collision. Dickey testified that on 11 July 1986, defendant came by Dickey's brother's house in his 1974 Oldsmobile and picked up Dickey and drove him to Bobby Johnson's house. Defendant was thought to be "high" at the time. Shortly thereafter they returned to Dickey's brother's house where Hawley was waiting for them. Hawley requested defendant to take him to the store and defendant agreed to do so. Hawley got into the front passenger seat; Dickey got into the rear seat and defendant got into the driver's seat. Shortly after pulling out onto the highway, defendant and Hawley began "fussing" at each other and the tires of the Oldsmobile ran off onto the shoulder of the road. Defendant "tried to snatch the car back. When he got it back straight, that's when he hit the [Renault] head-on." The Renault was on the left side of the highway traveling in a westerly direction. After impact, Dickey exited the car through the front passenger door and left the scene.

Irvin Hawley testified that he, Dickey and defendant spent the afternoon drinking; that defendant was operating the vehicle at the time of the accident and defendant was "high" at the time; that the Oldsmobile hit the shoulder of the highway, veered left across the highway and struck the Renault. Bobby Johnson testified that shortly after dinner on 11 July 1986, defendant stopped by his house driving the Oldsmobile and that defendant had been drinking. Renshal Moore testified that he saw defendant approximately thirty to forty-five minutes prior to the accident and defendant appeared to be intoxicated at that time. Dr. Homer Petrou, a general surgeon who treated defendant in the hospital emergency room after the accident, testified that in his opinion defendant was intoxicated at the time when he examined him.

Defendant presented evidence which tended to show the following. Defendant testified that on 11 July 1986, he drove his 1974 Oldsmobile to David Dickey's house to visit Benjamin Dickey. Around 1:30 p.m., defendant and Benjamin Dickey went to visit Bobby Johnson from whom Benjamin obtained a pint of liquor. Defendant and Benjamin thereafter returned to David Dickey's

house. Defendant felt the onset of a seizure about the time they arrived. Between 2:30 p.m. and 7:30 p.m., defendant, Benjamin Dickey and Irvin Hawley drank the pint of liquor Benjamin got from Bobby Johnson. Defendant and Hawley drank the majority of the liquor. Thereafter, Hawley asked defendant to drive him to a nearby store. Defendant refused because he was afraid that he might have a seizure while driving and might "black out." Defendant denied that he was intoxicated. Defendant also testified that Benjamin Dickey offered to drive the car and he consented because he felt the onset of a seizure and not because he was intoxicated. The three of them got into the vehicle, Dickey got into the driver's seat, Hawley got into the front passenger's seat, and defendant got into the back seat. Defendant fell asleep in the back seat and was awakened by the collision. Defendant heard Dickey cursing and expressing remorse for having wrecked the car. Defendant exited the car, walked around to the front of it, collapsed and lost consciousness.

Frank Wrenn testified that he arrived at the scene of the accident shortly after it occurred. He observed someone behind the steering wheel, but was not sure who it was. However, it was not defendant or Benjamin Dickey. Marie Hargrove, defendant's sister, testified that defendant often lent his car to others and that defendant had a history of suffering with seizures.

In this appeal defendant presents three issues for review: (1) whether the trial court erred in granting the State's motion *in limine* and sustaining the State's objection at trial to exclude the admission of any evidence that Irvin Hawley had been originally identified as the driver of the car and charged with the offenses for which defendant was being tried; (2) whether the trial court erred in failing to submit misdemeanor death by vehicle as a lesser included offense of involuntary manslaughter while driving under the influence of alcohol; and (3) whether the trial court erred in failing to submit felony death by vehicle as a lesser included offense of involuntary manslaughter while driving under the influence of alcohol.

II

[1] Prior to jury selection, the State moved that defendant be prevented from bringing to the jury's attention the fact that some other individual may have originally been charged with the of-

fenses in question. The trial court tentatively granted the motion with the understanding that the court would rule upon the admission of such evidence at such time as it might be presented during the course of trial.

During defense counsel's cross-examination of Lonnie W. Holt, the investigating officer, regarding the accident report the officer filed, the trial court sustained the State's objection to the following exchange, but allowed defendant, on voir dire, to include the evidence in the record as defendant's proffer of proof.

Q. Mr. Holt, would you tell the Court what (sic) you have down as being (sic) the driver of the vehicle in the accident report; the driver of the 1974 Oldsmobile Cutlass owned by Alfonza Williams?

A. Irvin no middle name Hawley.

Q. Irvin Hawley. And where in the vehicle did you place Mr. Alfonza Williams in your accident report?

A. As being a passenger in the vehicle in the front.

Q. Did you say the front of the car?

A. Yes, sir.

Defendant argues that this excluded evidence was both relevant and admissible to show that Hawley or someone other than defendant was driving at the time of the accident.

The admissibility of evidence that someone other than the defendant committed the crime for which defendant is being tried, "depend[s] upon its relevancy in the case in which it is offered — whether it logically tends to prove or disprove some material fact at issue in the particular case." *State v. Britt*, 42 N.C. App. 637, 641, 257 S.E. 2d 468, 471 (1979). *See also State v. Gains*, 283 N.C. 33, 194 S.E. 2d 839 (1973), and *State v. Makerson*, 52 N.C. App. 149, 277 S.E. 2d 869 (1981). In order to be competent, evidence that the crime was committed by another person must point unerringly to the other person's guilt. *State v. Shinn*, 238 N.C. 535, 78 S.E. 2d 388 (1953). *See also State v. Britt, supra* and *State v. Jones*, 32 N.C. App. 408, 232 S.E. 2d 475, *cert. denied*, 292 N.C. 643, 235 S.E. 2d 63 (1977). Evidence which tends to show nothing more than conjecture or suspicion that someone other than the

defendant had an opportunity to commit the crime, without tend-
ing to show that the other person actually did commit the crime
and that therefore the defendant did not do so, is too remote to
be relevant and should be excluded. *State v. Britt, supra.*

In the case *sub judice,* the excluded evidence merely tends to
show that Officer Holt *assumed,* and included within the police
report, that Irvin Hawley was the driver and that defendant was
a passenger. This evidence does not point unerringly to Hawley
or anyone else as the driver. Also, the fact that Hawley was
originally charged and the charges were subsequently dropped
has no probative value as to whether Hawley was the driver at
the time in question. Nor does the excluded evidence corroborate
defendant's version. In fact, it is inconsistent with defendant's
testimony. Defendant testified that Benjamin Dickey was the
driver and that Hawley was a passenger. Defendant's contention
is without merit.

Further, defendant's argument that the police report contain-
ing the questioned evidence was admissible under the provisions
of G.S. Sec. 8C-1, Rule 803(8), is also without merit. As stated
above, the evidence had no probative value and was therefore
properly excluded.

III

[2] Defendant contends that the trial court erred in failing to
submit misdemeanor death by vehicle as a lesser included offense.

It is well-established in this jurisdiction that the trial court is
required to submit to the jury a lesser included offense of the
crime charged in the bill of indictment where there is evidence of
defendant's guilt of the lesser crime. *State v. Moore,* 300 N.C. 694,
268 S.E. 2d 196 (1980). Misdemeanor death by vehicle is a lesser
included offense of involuntary manslaughter. *State v. Lackey,* 71
N.C. App. 581, 323 S.E. 2d 32 (1984); *State v. Baum,* 33 N.C. App.
633, 236 S.E. 2d 31, *rev. denied,* 293 N.C. 253, 237 S.E. 2d 536
(1977); *State v. Freeman,* 31 N.C. App. 93, 228 S.E. 2d 516, *rev.
denied,* 291 N.C. 449, 230 S.E. 2d 766 (1976).

In the case *sub judice,* the evidence presented supports the
contention that defendant operated his vehicle while impaired and
that his operation of the vehicle while impaired contributed to the
collision and ensuing deaths. However, there also was evidence

presented from which the jury could have found that the only act of defendant which proximately contributed to the collision and ensuing deaths was some other violation of the traffic law, such as failure to maintain a proper lookout, failure to keep his vehicle under proper control, or operating his vehicle on the left-hand side of the highway, contrary to the laws provided therefor. The evidence presented in the case was conflicting. The State presented evidence to the effect that at the time of the collision defendant was intoxicated and was the operator of the vehicle; that immediately before the accident, defendant lost control of the vehicle and ran onto the shoulder of the highway; that defendant attempted to "snatch" the vehicle back and veered across the highway into the left-hand lane and collided head-on with the other vehicle. Defendant presented evidence that at the time of the accident he was neither intoxicated nor was he the operator of the vehicle. It is within the province of the jury to believe all of the evidence presented or to disbelieve all of the evidence presented or to believe some and to disbelieve the other. We, therefore, hold that under the evidence presented in this case the court was required to instruct the jury on the lesser included offense of misdemeanor death by vehicle. *Compare State v. Lackey, supra.*

IV

[3] Defendant contends that felony death by vehicle is a lesser included offense of involuntary manslaughter while driving under the influence of alcohol and that the court erred in failing to instruct the jury on that offense.

G.S. 20-141.4(a1) defines the offense of felony death by vehicle.

A person commits the offense of felony death by vehicle if he unintentionally causes the death of another person while engaged in the offense of impaired driving under G.S. 20-138.1 and commission of that offense is the proximate cause of the death.

In *State v. McGill*, 314 N.C. 633, 336 S.E. 2d 90 (1985), the Court stated,

[W]hen a death is caused by one who was driving under the influence of alcohol, only two elements must exist for the successful prosecution of manslaughter: a willful violation of

N.C.G.S. 20-138 and the causal link between that violation and the death. (Citation omitted.)

*Id.* at 637, 336 S.E. 2d at 93. We hold that the offense of felony death by vehicle requires the identical essential elements to those required for a conviction of involuntary manslaughter predicated on a violation of G.S. 20-138.1; to wit: a willful violation of G.S. 20-138.1, and a causal link between that violation and the death. Defendant asserts that involuntary manslaughter is different because it requires a *willful* violation of G.S. 20-138.1, also enunciated in *McGill*, and that there is no mention of *willfulness* in the offense of death by vehicle as defined in G.S. 20-141.4. Defendant contends, therefore, that the legislature, in failing to use the term "willful" in G.S. 20-141.4(a1), must have intended to create felony death by vehicle as a lesser included offense of involuntary manslaughter, upon which a conviction could be obtained solely upon proof that a driver was, in fact, impaired and that impairment was a proximate cause of death. Although defendant presents a novel argument, we find it to be without persuasion.

While it is true that the word "willful" is not used in G.S. 20-141.4(a1), we believe that the language "unintentionally causes the death of another person while engaged in the offense of impaired driving under G.S. 20-138.1" as used within G.S. 20-141.4 (a1) refers to the fact that the *act* which resulted in death is *intentionally* committed and is an act of impaired driving under G.S. 20-138.1. It is well understood that an act done intentionally may be described as one done willfully. In *McGill, supra,* the Court stated in footnote number 3 that "one who drives under the influence cannot be said to do so inadvertently. The act (and the violation) is willful by its very nature." [sic] 314 N.C. at 636, 336 S.E. 2d at 89. We hold that felony death by vehicle is not a lesser included offense of involuntary manslaughter while driving under the influence of alcohol. The court properly refused to submit this issue to the jury.

Because the trial court failed to instruct the jury on the lesser included offense of misdemeanor death by vehicle, defendant is entitled to a new trial.

New trial.

Judges BECTON and GREENE concur.